The Honorable Stephen D. Bright State Representative 49 Oak Forest Loop Maumelle, AR 72113-6816
Dear Representative Bright:
You have requested an Attorney General opinion concerning the change in the City of Maumelle's form of government.
More specifically, you indicate that on May 8, 2001, the City of Maumelle elected to reorganize its form of government as a mayor/council (aldermanic) form of government. The city had been operating under the city manager form of government. A special election for municipal officers was held 55 days later on July 3. The positions to be elected were eight aldermen, the mayor, and the city attorney. All positions were elected by a vote of more than 50% except for two alderman positions. Those two positions will have a runoff on July 24. Even without those two positions, there is a quorum of the new city council.
Accordingly, you have asked:
Can the newly elected officials take office before the July 24 runoffs?
RESPONSE
State law does not explicitly address this question. It does not prohibit the newly-elected officers from taking office before the runoffs have been held, nor does it require them to take office prior to the runoffs. The reorganization law simply does not contemplate situations in which runoff elections are held. In light of this gap in the law, the issue becomes largely a matter of statutory interpretation. The basic principle in statutory interpretation is to determine and give effect to the legislative intent. Collins v. Excel Spec. Prod., 345 Ark. ___, ___ S.W.3d ___ (July 5, 2001).
Having used this principle as a guideline in addressing your question, I have formed the opinion that the various relevant statutes, when read as a whole, indicate a general intent that municipal offices not remain vacant after elections. It is my opinion, as explained more fully below, that in a situation involving a transition to a new form of government, the concerns about vacancies would be best allayed if the newly-elected officers waited to take office until after the runoffs were held.
The process of reorganization from a city manager form of government to a mayor/council (aldermanic) form of government is governed by the provisions of A.C.A. §§ 14-47-107 et seq. Those statutes provide that in a city that has reorganized from a city manager form of government to a mayor/council form of government, "all laws pertaining to the aldermanic form of government for such class of cities shall apply." A.C.A. §14-47-107(g)(2)(A). The statute also provides that "[o]n the date as prescribed by such laws when newly elected city officials take office, the term of office of all members of the board of directors shall terminate, and the transition to the aldermanic form of government shall be completed." A.C.A. § 14-47-107(B)(i). The problem is that the laws pertaining to the aldermanic form of government do not prescribe a date when officials who are elected in a special election must take office.
Nevertheless, these laws do indicate a general legislative intent that council positions not remain vacant after an election. For example, the provisions of A.C.A. § 14-42-201, governing the election of municipal officers at the regular election, provides that newly elected municipal officers must take office on January 1 in the year after their election (which is the day after their predecessors' terms of office end).
This purpose of avoiding vacancies in municipal office is also apparent from the statute that requires city officers to take the oath prescribed by the Arkansas Constitution. That statute states in pertinent part:
 (d) The council or aldermen shall have the power to declare the office of any elected or appointed person vacant who shall fail to take the oath of office or give the bond required in this section within ten (10) days of the first day of January after his election or within ten (10) days after he has been notified of his appointment. In such case, the council or aldermen shall proceed to appoint as in other cases of vacancy.
A.C.A. § 14-42-106(d).
The fact that the General Assembly made provision for filling the office by appointment in the event that the elected member fails to take the oath is a clear indication of the General Assembly's purpose of assuring that council positions are filled.
In the statute governing reorganizations to the city manager form of government, the General Assembly was even more explicit in indicating its intent to avoid vacancies in city offices. Under A.C.A. § 14-47-109(e), directors who have been elected in a special election to serve on the newly formed board of directors must take office on the first Monday following the certification of their election.[1]
Although it could be argued that these statutory indications of the General Assembly's intent to avoid vacancies should lead to a conclusion that newly elected aldermen in a reorganized mayor/council government must take office immediately, I do not interpret these indicators as mandating such action. Rather, I take the position that the basic legislative intent of the avoidance of vacancies would best be served if the newly-elected council members waited to take office until after the runoff elections are held. My reasoning is as follows: If the newly-elected council members take office prior to the runoffs, the two positions for which runoffs are held will remain unfilled until after the runoffs. This result is precisely what the General Assembly sought to avoid, as discussed above. But if the old government continues to operate until after the runoffs are completed, no such gaps will be created.
For this reason, I conclude that in the absence of more specific legislative guidance on this issue, the general legislative intent of avoiding vacancies in municipal offices will be best served if the newly-elected council members wait to take office until after the runoff elections are held.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
[1] I note that it could be argued that this requirement applies by analogy to newly elected aldermen in the reverse situation (i.e.,
situations involving reorganizations to the aldermanic form of government), given the fact that this set of laws governing reorganizations was amended to extend to reorganizations to the aldermanic form of government. See Acts 1965, No. 157 (stating that intent and purpose of the act was to make uniform the requirements for cities undertaking both types of reorganizations).